UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| K.A., <br><br>        Plaintiff, <br><br>   v. <br><br>LELAND DUDEK, <br><br>        Defendant. | Case No. 23-cv-06703-VKD <br><br>**ORDER RE SOCIAL SECURITY APPEAL** <br><br>Re: Dkt. Nos. 16, 20, 23 |

Plaintiff K.A.[1] challenges a final decision of the Commissioner of Social Security ("Commissioner")[2] denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq.* K.A. contends that the administrative law judge ("ALJ") failed to adequately develop the record, erred in evaluating the medical opinion evidence, and improperly discounted K.A.'s subjective statements regarding his symptoms. As a result, K.A. argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence. The Commissioner maintains that the ALJ properly evaluated the evidence and that substantial evidence supports his conclusion that K.A. is not disabled.

The parties have filed their respective briefs. Dkt. Nos. 16, 20, 23. The matter was

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials. This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Leland Dudek, the Acting Commissioner of the Social Security Administration, is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

1  submitted without oral argument. Civil L.R. 16-5. Upon consideration of the moving and
2  responding papers and the relevant evidence of record, for the reasons set forth below, the Court
3  reverses the Commissioner's decision and remands this case for further administrative proceedings
4  consistent with this order.[3]

## I. BACKGROUND

K.A. was 56 years old on October 31, 2018, the date he filed his SSI application. *See* AR[4] 40, 97, 124. The record indicates that he has at least a high school education, and that he has worked as a cook and an in-home care companion, but has not worked since around November 2013. *See* AR 40, 41, 339.

On October 31, 2018, K.A. protectively filed an SSI application, alleging disability beginning November 28, 2017 due to back pain, hypertension, diabetes, arthritis, and pain. *See* AR 86, 97, 124. His application was denied initially and on review. AR 85-97, 109-124. K.A. did not appear for the scheduled August 2, 2022 administrative hearing before ALJ Kevin Gill. *See* AR 250, 260. In response to a notice to show cause for failure to appear, K.A. stated that he did not appear for the hearing because he "was not feeling good." AR 263. Although the ALJ remarked that K.A. submitted no corroborating medical records, he found that K.A.'s response met "the minimum sufficiency requirements for good cause." AR 17.

K.A. appeared and testified at a second hearing before ALJ Gill on January 10, 2023. A vocational expert also testified at that hearing. *See* AR 36-52. The ALJ issued an unfavorable decision on June 1, 2023. AR 17-30.

ALJ Gill noted that K.A. had previously filed an SSI application on October 20, 2014, and that a different ALJ (i.e., ALJ Alis) found K.A. not disabled on November 27, 2017. The Appeals Council denied K.A.'s request for review of ALJ Alis's decision. ALJ Alis's decision was affirmed on appeal to the U.S. District Court for the Northern District of California. *See* AR 17,

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 9.

[4] "AR" refers to the certified administrative record filed with the Court. Dkt. No. 12.

56-68, 98-108.

Stating that ALJ Alis's prior "adverse decision is administratively final," ALJ Gill considered principles of administrative res judicata.[5] ALJ Gill found that "although [K.A.]'s impairments and residual functional capacity have not changed substantially, he recently changed age categories to that of an individual closely approaching retirement age." AR 18. The ALJ further found that K.A.'s change in age categories "constitutes a changed circumstance, although his changed age category is not dispositive because it does not affect his unchanged residual functional capacity." *Id*.

ALJ Gill proceeded with the five-step sequential disability analysis and found that K.A. has not engaged in substantial gainful activity since October 31, 2018, the date of his SSI application. AR 20. The ALJ found that K.A. has the following severe impairments: mild arthritis in the knees and ankles; plantar fasciitis; degenerative disc disease; diabetes mellitus; obesity; and chronic pain syndrome.[6] AR 21. The ALJ found that K.A. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations. AR 25. He adopted ALJ Alis's prior RFC statement and determined that K.A. has the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with some restrictions:

> this individual is limited to lifting and carrying 50 pounds occasionally and 25 pounds frequently; sitting six hours in an eight-hour day; standing and walking six; this individual is limited to frequent climbing ladders, ropes, and scaffolds; frequent stoop, kneel, crouch or crawl.

*Id*. ALJ Gill found that transferability of job skills is not an issue because K.A. does not have past relevant work. AR 29. Based on K.A.'s age, education, work experience, and RFC, the ALJ

---

[5] "The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings. The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (citations omitted); *see also* Acquiescence Ruling 97-4(9), 1997 WL 742758.

[6] The present appeal focuses on K.A.'s physical impairments. K.A. does not challenge any of the ALJ's findings concerning his mental functioning.

1  determined that he can perform other jobs that exist in significant numbers in the national
2  economy, such as floor waxer, linen clerk, and automobile detailer.  *Id*.  The ALJ concluded that
3  K.A. has not been disabled within the meaning of the Act from the October 31, 2018 date of his
4  SSI application.  AR 30.
5  　　The Appeals Council denied K.A.'s request for review of the ALJ's decision.  AR 1-6.
6  K.A. then filed the present action seeking judicial review of the decision denying his application
7  for benefits.

## II.　STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

## III.　DISCUSSION

### A.　Development of the Record

K.A. received treatment at the LifeLong Medical Care clinic ("LifeLong").  *See generally* AR 420-622, 626-687, 747-762.  On January 4, 2023, about one week before the January 10, 2023

hearing, K.A.'s counsel informed the ALJ that "[t]he record currently is not inclusive of [K.A.]'s most recent medical records from [LifeLong]. We are currently working to get these records rushed to us and respectfully request that the record remain open until these records are obtained." AR 398; *see also* AR 18. The record indicates that by the time of the January 10, 2023 hearing, the ALJ had received LifeLong records only through August 2019. *See* AR 39, 420-622, 626-687. At the hearing, the ALJ noted the absence of records since 2019. AR 46. When asked by his counsel what "prevented [him] from seeking treatment for [his] physical health," K.A. stated that he had transportation issues. *Id*. At counsel's request, the ALJ held the record open for two weeks following the hearing for the submission of updated records. AR 39. Additionally, counsel requested a consultative examination, which the ALJ agreed to arrange. AR 51.

Other than the LifeLong records through August 2019, the medical evidence contains only two additional records concerning K.A.'s physical health issues: (1) a report of a February 25, 2023 internal medicine consultative examination conducted by Thein Win, M.D., a doctor of internal medicine, and (2) a LifeLong May 12, 2023 treatment note and physical RFC questionnaire filled out by Jennifer Tsang, NP. *See* AR 736-762. Dr. Win opined that K.A. is capable of performing work-related activities within a range of medium work, while Nurse Tsang opined that K.A. has disabling limitations. *See id*.

Nurse Tsang's May 12, 2023 treatment note references and purports to summarize other treatment records in 2021 and 2022, including 2021 lumbar x-rays that she said "show mod[erate] degenerative disc disease and osteoarthritis." AR 759. The 2021 and 2022 treatment notes referenced by Nurse Tsang, including the 2021 lumbar x-rays, are not in the record.

In assessing the severity of K.A.'s medically determinable impairments at step two of the sequential analysis, the ALJ began by noting that ALJ Alis's prior unfavorable decision identified the following severe impairments: "'mild arthritis in the knees and ankles, plantar fasciitis; and chronic lower back pain most probably secondary to mild degenerative disc disease.'" AR 21 (quoting AR 59). Stating that K.A. "presented no new and material evidence related to his alleged lower extremity impairments," ALJ Gill adopted ALJ Alis's "prior finding of severity." *Id*. While ALJ Gill noted Nurse Tsang's reference to the 2021 lumbar x-rays showing "mod[erate]

5

degenerative disc disease," he stated that those "records have not been provided, and records from Life[L]ong show only a treatment gap from August 27, 2019 to May 12, 2023." *Id*. The ALJ further observed that Nurse Tsang's report "appears to be in error," stating that "when questioned about the absence of any treatment records since 2019, [K.A.] testified he had not had any treatment due to lack of transportation." *Id*. The ALJ nonetheless stated that he "resolved all discrepancies in the light most favorable to [K.A.] by accepting Nurse Tsang's unsupported summary of treatment and finding a diagnosis of lumbar degenerative disc disease in contrast to the prior finding of 'chronic lower back pain most probably secondary to mild degenerative disc disease.'" *Id*. (citing AR 59).

However, in subsequently evaluating K.A.'s RFC, ALJ Gill discounted K.A.'s statements regarding the severity of his symptoms and found Nurse Tsang's opinion unpersuasive based, in part, on "a treatment gap from August 27, 2019 to May 12, 2023" and by expressing doubt regarding the existence of the 2021 lumbar x-rays referenced in Nurse Tsang's report. AR 27, 28. The ALJ adopted the prior RFC determination that K.A. can perform medium work, explaining that "the consistently normal physical examinations contained in the medical evidence of record with minimal treatment after the claimant's application date reveal no changed circumstances in the claimant's physical residual functional capacity since he was last found capable of medium work with frequent postural activities." AR 27.

K.A. argues that the manner in which the ALJ treated the records summarized in Nurse Tsang's report was itself ambiguous and requires further development of the record. In K.A.'s view, if the ALJ credited those records, then he should have accounted for them in evaluating the medical and other evidence in determining K.A.'s RFC. Conversely, K.A. argues that if the ALJ was not willing to credit the summary of records in Nurse Tsang's report, then he should have requested those records, as they formed part of the bases for Nurse Tsang's opinion regarding K.A.'s physical RFC and provided support for K.A.'s subjective statements. *See* Dkt. No. 16 at 14; Dkt. No. 23 at 6. The Commissioner maintains that the ALJ properly resolved any discrepancy regarding the existence of the records by accepting Nurse Tsang's summary and a diagnosis of lumbar degenerative disc disease. *See* Dkt. No. 20 at 12-13. Additionally, the

6

Commissioner notes that when K.A. submitted the additional May 2023 LifeLong records, he did not advise or indicate that there were additional records that had not yet been produced. The Commissioner contends that, under the circumstances presented here, the ALJ did not breach his duty to fully and fairly develop the record, and that K.A. should not be permitted to shift his obligation to produce or inform the ALJ of the existence of additional records. *See* Dkt. No. 20 at 11-13.

In Social Security cases, it is a claimant's duty to prove that he is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *see also* 42 U.S.C. § 1382c(a)(3)(H)(i) (§ 423(d)(5) applies in SSI cases); 20 C.F.R. § 416.912(a) ("You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware."); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (claimant's duty to prove he is disabled). Nonetheless, the ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotations and citations omitted); *see also* 20 C.F.R. § 416.912(d) (agency regulations stating that "[o]ur responsibility" includes certain efforts to help develop claimant's complete medical history). "This duty exists even when the claimant is represented by counsel." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at 459-60; *see also Tonapetyan*, 242 F.3d at 1150 ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.") (quotations and citation omitted). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

7

1 Although K.A. and the Commissioner cite these general principles regarding the development of the record and a claimant's and ALJ's respective obligations regarding evidence, neither party cites authorities demonstrating how these principles should be applied under the circumstances presented here. Having considered the parties' respective arguments, the Court is not persuaded that this is a matter of the ALJ failing to develop the record; it does not appear that the ALJ breached that duty. Rather, the ALJ erred in purporting to credit Nurse Tsang's summary of records and finding a diagnosis of lumbar degenerative disc disease to resolve a gap in K.A.'s treatment records, but then discrediting Nurse Tsang's opinion and K.A.'s subjective statements based on the absence of those very records.

The Court cannot conclude that the error was harmless, as the referenced gap in K.A.'s treatment records appeared to inform the ALJ's determination that there was no changed circumstance in K.A.'s physical RFC since ALJ Alis's prior adverse decision finding him capable of medium work. AR 18, 21, 27, 28. *See, e.g., Trujillo v. Berryhill*, No. 18-cv-07125-SVK, 2019 WL 6251280, at *2 (N.D. Cal. Nov. 22, 2019) (stating that ALJ's duty to develop the record "is such that the ALJ may not decide an issue against the claimant based on the absence of evidence in the record.") (citation omitted); *Levesque v. U.S. Soc. Sec. Comm'n, Acting Comm'r*, No. 18-cv-420-LM, 2019 WL 2004298, at *7 (D. N.H. May 7, 2019) (ALJ failure to obtain missing x-ray results prejudicial where treating doctor relied on results in forming his opinion and absence of x-rays was part of reason for ALJ's rejection of doctor's opinion).

Accordingly, remand is required.

### B. Opinion Evidence

K.A. argues that the ALJ did not properly evaluate opinions rendered by examining consultant Dr. Win and treatment provider Nurse Tsang. As noted above, Dr. Win conducted an internal medicine evaluation of K.A. on February 25, 2023. AR 736-746. Dr. Win diagnosed "[a]rthritis pain with back pain and right knee pain as per claimant complaint" and opined that K.A. could perform activities within a range of medium work. AR 736-739. The record indicates that Nurse Tsang saw K.A. for an appointment on May 12, 2023 and filled out a physical RFC form, in which she opined that K.A. had disabling impairments that would cause him to miss

work more than three times per month and interfere with his concentration and pace for 50% of an eight-hour workday. *See* AR 736-753. The ALJ found Dr. Win's opinion persuasive and Nurse Tsang's opinion unpersuasive. AR 27-28. K.A. argues that the ALJ's assessment of the opinions is not supported by substantial evidence. The Commissioner argues that the ALJ properly evaluated these opinions and gave legally sufficient reasons for his assessment supported by substantial evidence.

### 1. Legal Standard

Under the regulations that apply to K.A.'s application, the Commissioner does not give specific evidentiary weight to medical opinions, including the deference formerly given to the opinions of treating physicians. Instead, the Commissioner evaluates the "persuasiveness" of all medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). An ALJ's decision "including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 416.920c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 416.920c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources

9

1  and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R.

2  § 416.920c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical

3  finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

4  the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20

5  C.F.R. § 416.920c(c)(2). The ALJ "may, but [is] not required to," explain how he or she

6  considered the remaining three factors listed in the regulations. *Id*. § 416.920c(b)(2).

### 2.     Dr. Win's Opinion

The ALJ found Dr. Win's "more limiting medium residual functional capacity statement persuasive," explaining that Dr. Win's opinion is (1) supported by his own examination findings; (2) supported by "consistently unremarkable physical examinations" in K.A.'s treatment records; and (3) consistent with the opinions of the state agency consultants who assessed an RFC for medium work. AR 27. The ALJ's findings regarding the supportability and consistency of Dr. Win's opinion are accurate, so far as they go. Dr. Win noted normal physical examination findings, except for K.A.'s reports of pain around the back and right knee on a right-side straight leg test at 45 degrees. Dr. Win otherwise reported that K.A. walked with a normal gait; had no need for an assistive device; had 5/5 strength in the bilateral upper and lower extremities, including grip; and no sensory deficits. *See* AR 737-739; *see also* AR 18. Although, Dr. Win marked boxes in the check-box form appended to the narrative report, indicating that K.A. has the ability to lift/carry weight consistent with heavy work (*see* AR 740), the ALJ disregarded Dr. Win's check-box responses and focused on the written narrative portion of the report.[7] *See generally Kitchen v. Kijakazi*, 82 F.4th 732, 741 (9th Cir. 2023) (ALJ may discount a medical opinion in a check-box form containing little or no explanation). Substantial evidence also supports the ALJ's findings regarding the supportability and consistency of Dr. Win's opinion with K.A.'s largely normal examinations in the medical evidence (*see, e g.,* AR 421, 424, 427-28, 431, 439, 442, 445, 453, 457, 463, 472, 475-476, 487, 490, 493, 498, 504, 508, 514, 520, 527, 530,

---

[7] The Court finds no basis to credit K.A.'s unsupported assertions as to what the checked boxes might signify with respect to the manner in which Dr. Win's examination may have been conducted.

579, 584, 588, 627) and with the opinions of the state agency consultants[8] (*see* AR 92-95, 116, 120).

However, for the reasons discussed above, the ALJ erred by "accepting" Nurse Tsang's summary of records and "finding a diagnosis of lumbar degenerative disc disease" (AR 21), yet evaluating evidence based on a gap in the record. Indeed, it is not clear how, if at all, the supposedly credited records and diagnosis factored in the ALJ's evaluation of the medical evidence. As this issue may impact the ALJ's evaluation of Dr. Win's opinion, remand is required.

### 3. Nurse Tsang's Opinion

The record indicates that Nurse Tsang saw K.A. on May 12, 2023 for an office visit and filled out a physical RFC questionnaire. AR747-762. Her treatment note indicates that K.A.'s physical exam was normal, except for "mild tenderness to palpation of right lumbar paraspinous region where there is muscle tightening present." AR 758. In the RFC questionnaire, Nurse Tsang checked boxes indicating that K.A. can lift and carry less than 10 pounds, stand and walk less than two hours, and has no limitations in his ability to sit. She also marked portions of the form indicating that K.A. could sit for five minutes before needing to change position; stand for one hour before changing position; and must walk every ten minutes for five minutes at a time. AR 749. She further noted that K.A. needs to shift at will from sitting to standing or walking; needs to lie down at unpredictable intervals during a work shift; can never engage in postural activities; and is limited in his abilities to push and pull. AR 749-750. As noted above, Nurse Tsang indicated that K.A.'s impairments would cause him to be absent from work more than three times per month and would affect his concentration and pace 50% of an eight-hour workday. AR 753. In explaining the medical findings supporting her opinion, Nurse Tsang cited more than

---

[8] To the extent K.A. intended, within the context of arguments regarding Dr. Win's opinion, to separately challenge the ALJ's assessment of the state agency consultants' prior administrative findings, his one-sentence argument is conclusory and poorly developed. *See* Dkt. No. 16 at 9-10. The Court construes this portion of K.A.'s argument as part and parcel of his contention that in evaluating Dr. Win's opinion, the ALJ did not properly account for the records summarized in Nurse Tsang's report.

1   once to the 2021 lumbar x-rays referenced in her treatment note, but which are not in the record.
2   AR 751.
3         The ALJ found Nurse Tsang's opinion regarding K.A.'s functional abilities to be "very
4   unpersuasive," explaining that her opinion is "unsupported by the consistently unremarkable
5   physical examinations contained in the medical evidence of record, including her own
6   observations" documented in her May 12, 2023 treatment note.  AR 28.  Additionally, the ALJ
7   noted that Nurse Tsang saw K.A. only once.  *Id.*  The Court finds no error in the ALJ's findings
8   regarding the supportability of Nurse Tsang's opinion, so far as they go.  K.A. does not cite any
9   evidence to suggest that Nurse Tsang saw K.A. more than once; nor does the Court find a basis to
10  credit K.A.'s speculative assertions regarding the degree of Nurse Tsang's familiarity with K.A. or
11  his records.  However, for the reasons discussed above, the ALJ erred insofar as he expressly
12  credited Nurse Tsang's summary of records, including the 2021 lumbar x-rays and a diagnosis of
13  lumbar degenerative disc disease (AR 21), but rejected Nurse Tsang's opinion based in part on
14  "the absence of any treatment records from August 2019 to May 2023[.]"  AR 28.  Accordingly,
15  remand is required.

16  **C.   Plaintiff's Statements**
17        In a February 19, 2019 exertion questionnaire, K.A. stated that he has leg and back pain
18  and that he sometimes cannot get out of bed.  AR 346.  He noted that he mostly stays at home; can
19  walk about five blocks; can do his own grocery shopping about once per month; and uses a cane,
20  but sometimes tries to walk without it.  AR 346-348.
21        At the January 10, 2023 administrative hearing, K.A. testified that he has arthritis on the
22  right side of his body and back spasms.  AR 42.  With respect to the arthritis, K.A. noted constant
23  pain and stated that he sometimes cannot get out of bed and "can't hardly move."  AR 43.  He
24  testified that he can no longer carry grocery bags, has difficulty gripping and holding things, such
25  as a fork, and sometimes can barely raise his right arm.  AR 43-44.  K.A. stated that he has pain in
26  his right leg from his hip to his foot that makes it difficult for him to walk or stand.  AR 44.  He
27  noted that two or three days per week, the pain is so bad that he does not get out of bed.  *Id*.  K.A.
28  testified that he experiences spasms throughout the day "like a stabbing pain" on the right side of

his back, and that sometimes medication does not work. AR 45. On a typical day, if he is feeling well, K.A. testified that he mostly sits at home and watches television. *Id.*

While the ALJ found that K.A.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms, he discounted K.A.'s statements concerning the severity of his symptoms as "not entirely consistent with the medical evidence and other evidence in the record[.]" AR 26.

An ALJ is not "required to believe every allegation" of impairment. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis. First, "the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (cleaned up). If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* That is, the ALJ must make an assessment "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Id.* At the second step, "a claimant is *not* required to show that [his] medically determinable impairment could reasonably be expected to cause the severity of the symptom [he has] alleged, and is *not* required to produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Ferguson v. O'Malley*, 95 F.4th 1194, 1202 (9th Cir. 2024) (cleaned up, emphasis in original); *see also Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). A reviewing court is "constrained to review the reasons the ALJ asserts." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).

An ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at

13

1039. Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Smolen*, 80 F.3d at 1284. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). However, "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise." *Smartt*, 53 F.4th at 498.

Although K.A. points to records indicating that he repeatedly presented for medical appointments with complaints of back pain (*see* AR 426, 433, 456, 462, 578, 626, 649, 755, 759), substantial evidence supports the ALJ's finding that K.A.'s subjective complaints are not corroborated by his largely normal physical examinations, with no objective observations regarding back spasms or tenderness on the right side of K.A.'s body. *See* AR 26 (citing AR 422-463, 577-620, 626-669, 747-751, 755-759). But while the ALJ also correctly noted that a 2019 record indicates that K.A. reported that his pain was managed by Naproxen as he titrated off Norco (*see* AR 26 (citing AR 699), K.A. points out that Nurse Tsang's May 12, 2023 treatment note indicates that K.A. reported that Naproxen alone was not effective for pain management (*see* AR 758). Additionally, for the reasons discussed above, the ALJ erred in initially crediting Nurse Tsang's summary of records and diagnosis of lumbar degenerative disc disease, but in discounting K.A.'s subjective statements based on a treatment gap from August 27, 2019 to May 12, 2023. Accordingly, remand is required.

### D.     RFC Determination

K.A. argues that the ALJ's RFC determination is flawed because the ALJ failed to account for the degenerative disc disease he purported to credit at step two of the sequential analysis. The Commissioner argues that, even assuming K.A. had a severe lumbar degenerative impairment that

14

1  was corroborated by x-rays, the identification of additional severe impairments at step two of the
2  disability analysis does not necessarily result in additional RFC limitations.  *See* Dkt. No. 20 at 15.
3  The Commissioner misses the point.  "If an ALJ finds a severe impairment at step two, that
4  impairment must be considered in the remaining steps of the sequential analysis."  *Bray v.*
5  *Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *see also* 20 C.F.R. § 416.923.  Indeed,
6  in assessing RFC, an ALJ "must consider limitations and restrictions imposed by all of an
7  individual's impairments, even those that are not severe."  *Buck v. Berryhill*, 869 F.3d 1040, 1049
8  (9th Cir. 2017).  While the ALJ appeared to credit Nurse Tsang's summary of records and found a
9  diagnosis of lumbar degenerative disc disease at step two, it is not apparent that the ALJ took that
10 summary of records or impairment into account in the remaining steps of the sequential analysis,
11 including in the evaluation of the medical opinion evidence and K.A.'s subjective statements.
12 Accordingly, remand is required.

### IV.   DISPOSITION

For the reasons discussed above, the Court finds that remand is appropriate for further proceedings.  *Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018); 42 U.S.C. § 405(g).  The ALJ shall reassess the medical opinion evidence of Dr. Win and Nurse Tsang, K.A.'s subjective statements, and K.A.'s RFC, taking into account all of the impairments identified at step two, including those reflected in Nurse Tsang's summary of records that the ALJ accepted.  *See* AR 21.  It is not the Court's intent to limit the scope of the remand.

### V.   CONCLUSION

Based on the foregoing, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 31, 2025

Virginia K. DeMarchi
United States Magistrate Judge

15